UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

REZA R.,

Plaintiff,

v.

FRANK BISIGNANO, Commissioner of Social Security,

Defendant.

Case No.: 25-cv-1399-DDL

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER**

Plaintiff Reza R. seeks judicial review of the Social Security Commissioner's denial of his application for disability insurance benefits. Dkt. No. 1. The parties have consented to the undersigned's jurisdiction. Dkt. No. 3. Plaintiff moves the Court to remand his application to the Social Security Administration for an award of benefits or, alternatively, for further proceedings. *See generally* Dkt. No. 12. For the reasons stated below, the Court finds the Commissioner's determination that Plaintiff is not disabled is free of legal error and supported by substantial evidence. The Commissioner's decision is therefore **AFFIRMED**.

/ / /

/ / /

/ / /

## I.

## BACKGROUND

### A. Plaintiff's Application for Disability Benefits

On July 14, 2022, Plaintiff applied for disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, alleging disability beginning on February 10, 2020. Certified Administrative Record ("AR") at 193-199. Plaintiff alleged an inability to work due to neck, back, and right knee pain and depression. *Id.* at 22. Plaintiff's application was denied initially on January 24, 2023, and was denied again upon reconsideration on November 17, 2023. *Id.* at 18. Plaintiff requested an administrative hearing, which was held before Administrative Law Judge ("ALJ") Michael Radensky on April 29, 2024. *Id.* at 36-53. On June 7, 2024, the ALJ issued a finding that Plaintiff was not disabled. *Id.* at 15-28. Plaintiff appealed the decision to the Appeals Council, which denied review on May 19, 2025, making the ALJ's decision final. *Id.* at 1-4.

### B. Summary of the ALJ's Opinion

A person is considered "disabled" within the meaning of the Act if they suffer from a medically determinable physical or mental impairment which is expected to last at least a year and is of such severity that they cannot work, considering their age, education, and work experience. *See* 42 U.S.C. § 423(d). The ALJ followed the sequential five-step evaluation set forth in the regulations in adjudicating Plaintiff's disability claim.[1] *See*

---

[1] The five-step sequential evaluation is the same for both disability insurance benefits and supplemental security income. *See* 20 C.F.R. § 404.1520; *id.* § 416.920. The ALJ must determine the following: at step one, whether the claimant is engaged in substantial gainful activity; at step two, whether the claimant suffers from a severe impairment within the meaning of the regulations; at step three, whether the impairment meets or is medically equal to an impairment identified in the Listing of Impairments; at step four, the claimant's residual functional capacity ("RFC") based on all impairments and whether the claimant can perform their past relevant work; at step five, whether the claimant can make an

*generally* AR at 15-28.

At step one, the ALJ found Plaintiff "meets the insured status requirement of the Social Security Act through December 31, 2027," and that Plaintiff had "not engaged in substantial gainful activity since February 10, 2020, the alleged onset date." *Id.* at 20.

At step two, the ALJ found Plaintiff had the following severe impairments: "degenerative disc disease of the neck and back, status post surgeries to both areas; history of right knee injury status post-surgery; and bilateral carpal tunnel syndrome status post release on the left." *Id.* The ALJ determined that these impairments "significantly limit [Plaintiff's] ability to perform basic work activities." *Id.* However, the ALJ found that Plaintiff's "medically determinable mental impairments of major depression disorder and generalized anxiety disorder" were non-severe because they cause no more than a minimal limitation in Plaintiff's ability to perform basic mental work activities. *Id.* at 21. In reaching this conclusion, the ALJ considered the four functional areas referred to as the "paragraph B" criteria: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* The ALJ found that Plaintiff's mental impairments caused no more than a mild limitation in any of the paragraph B criteria. *Id.*

At step three, the ALJ found Plaintiff's impairments did not meet or medically equal a listed impairment. *Id.* Proceeding to step four, the ALJ determined Plaintiff:

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), specifically as follows: can lift and/or carry 20 pounds occasionally and 10 pounds frequently; can stand and/or walk for 4 hours out of an 8-hour workday with regular breaks; can sit for 6 hours out of an 8-hour workday with regular breaks; can occasionally climb, balance, stoop, kneel, crouch and crawl but cannot climb ladders, ropes, or scaffolds; can frequently,

---

adjustment to other work. If the claimant is found not disabled at any step, the analysis does not proceed to the next step.

> but not constantly, handle and finger bilaterally; can occasionally reach overhead bilaterally; should avoid concentrated exposure to extremes of temperature and vibration; and should avoid unprotected heights.

*Id.* at 21-22.

In formulating the above residual functional capacity (RFC), the ALJ considered Plaintiff's subjective testimony regarding his limitations. *Id.* at 22-26. Having reviewed the evidence, the ALJ found Plaintiff's statements "concerning the intensity, persistence and limiting effects of [his] symptoms…not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 22.

At step four, the ALJ concluded Plaintiff was unable to perform his past relevant work as an automobile salesperson or chef. *Id.* at 27. At step five, the ALJ determined an individual of Plaintiff's age, education, work experience, and residual functional capacity would be able to perform jobs which exist in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Plaintiff was "not disabled" within the meaning of the Act. *Id.* at 28.

## II.

## DISPUTED ISSUE

Plaintiff raises a single issue for review: Whether the ALJ erred in finding Plaintiff's mental impairments to be non-severe. Dkt. No. 12 at 2.

## III.

## STANDARD OF REVIEW

The Court's review of the Commissioner's final decision is "highly deferential." *Kitchen v. Kijakazi*, 82 F. 4th 732, 738 (9th Cir. 2023). The Court "will disturb the denial of benefits only if the decision contains legal error or is not supported by substantial evidence." *Id.* "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Id.* This Court must review the entire record and consider adverse as well as supporting evidence. *See Ahearn v. Saul*, 988 F.3d

1111, 1115 (9th Cir. 2021). The Court "may not reweigh the evidence or substitute [its] judgment for that of the ALJ." *Id.* Moreover, "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id.* If the evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld. *See id.* at 1115-16. However, the Court cannot affirm "on a ground upon which [the ALJ] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). Where the ALJ commits legal error, the Court may affirm the decision if the error is harmless, meaning "it is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

## IV.

## DISCUSSION

### A. Plaintiff Has Not Demonstrated Harmful Error

#### *1. Step Two Error*

Plaintiff alleges that the ALJ erred in finding that his mental impairments – major depressive disorder and generalized anxiety disorder – caused no more than "minimal limitations in [Plaintiff's] ability for basic mental activities," resulting in a step two finding that Plaintiff's mental limitations were non-severe. Dkt. No. 12 at 2.

In support of his argument, Plaintiff relies on the opinions of psychologist Dr. David Kendis, nurse practitioner Tiffany Tran, and psychiatrist Dr. Ernest Bagner. In Plaintiff's view, the ALJ engaged in circular reasoning by "reject[ing] all three treating and examining sources as being inconsistent with each other," and in doing so failed to provide the "specific and legitimate [reasoning] required for their rejection." *Id.* Plaintiff asserts that the ALJ's finding that Plaintiff's mental impairment was non-severe was "at clear odds with all treating and examining opinions" and that the opinions of non-examining, non-treating doctors should have been given less weight. *Id.* at 5-6.

/ / /

As an initial note, Plaintiff's argument applies the incorrect standard for rejecting medical opinions. Because Plaintiff applied for disability insurance benefits after March 27, 2017, the revised regulations set forth in 20 C.F.R. § 404.1520c apply to his claim. For claims brought after March 27, 2017, the regulations displaced the Ninth Circuit's case law requiring an ALJ to provide "specific and legitimate reasons" for rejecting examining opinions and "clear and convincing reasons" to reject uncontradicted opinions. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). "Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations." *Id.* at 792. "Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787.

Even so, the Court need not decide whether the ALJ's step two determination was supported by substantial evidence. Any alleged error by the ALJ in classifying Plaintiff's mental impairments as non-severe cannot justify reversal because the ALJ resolved step two in Plaintiff's favor and continued with the remaining steps of the analysis. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (because step two was decided in the claimant's favor, he "could not possibly have been prejudiced"); *see also Loader v. Berryhill*, 722 F. App'x 653, 655 (9th Cir. 2018) (where the claimant prevailed at step two, and his case proceeded on the basis of "other" severe impairments, "it made no difference for the ALJ's ensuing analysis whether his medically determinable depression was previously considered severe"). "Step two is merely a threshold determination meant to screen out weak claims," and it does not "identify the impairments that should be taken into account when determining the RFC." *Buck*, 869 F.3d at 1048. Accordingly, the Court need not decide whether the ALJ was substantially justified in finding Plaintiff's mental impairments to be non-severe. Even if the finding was not substantially justified, it was harmless, and "[t]he Court may not reverse an ALJ's decision on account of a harmless error." *Id.*

/ / /

2. *Consideration of Mental Limitations in Formulating the RFC*

Plaintiff's only charge of error is that the ALJ found his mental impairments to be non-severe at step two of the analysis; Plaintiff does not argue that the ALJ failed to account for his mental impairments in formulating the RFC. By failing to raise this issue in his brief, Plaintiff has arguably waived it. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address the ALJ's finding where plaintiff "failed to argue [the] issue with any specificity in his briefing"); *Thompson v. King*, No. 23-3976, 2025 WL 560696, at *1 (9th Cir. Feb. 20, 2025) (finding that plaintiff waived their challenge to the ALJ's step two finding where the error was not included in their opening brief). Regardless, the Court now examines the issue.

When formulating the RFC, the ALJ must "consider the limiting effects of all [a claimant's] impairment(s), even those that are not severe." 20 C.F.R. § 404.1545(e). But consideration of the limiting effects of all impairments does not require the inclusion of every impairment into the final RFC if the record indicates the non-severe impairment does not cause a significant limitation in the plaintiff's ability to work. *See Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005) (finding ALJ's decision not to include plaintiff's non-severe impairment in RFC determination was proper because there was no evidence the impairment caused any functional limitations).

First, the ALJ considered at length Plaintiff's mental limitations in formulating the RFC. The ALJ states that in making the RFC determination, he "considered *all symptoms*…based on the requirements on 20 CFR 404.1529 and SSR 16-3p." AR at 22 (emphasis added). The ALJ discussed the opinions of state agency psychological consultants Dr. Campbell and Dr. Caruso Radin, who reviewed Plaintiff's mental health records; the opinion of psychology consultative examiner Dr. Kendis, who examined Plaintiff on December 15, 2022; and the opinion of psychiatric consultative examiner Dr. Bagner, who examined Plaintiff on October 26, 2023; and the opinion of NP Tran, whom Plaintiff identified as his primary mental health provider, and her treatment records. AR at 20-21, 25-26. The ALJ also considered Plaintiff's subjective testimony and his spouse's

Third Party Function Statement. *Id.* at 26. The ALJ concluded that Plaintiff's mental impairments "did not cause more than a minimal limitation in [Plaintiff's] ability to perform basic mental work activities," and that Plaintiff's "statements concerning the intensity, persistence and limiting effects" of his mental impairments were "not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 21-22.

Second, there is substantial evidence to support the ALJ's decision not to include Plaintiff's mental limitations in the RFC. The ALJ "is the final arbiter with respect to resolving ambiguities in the medical evidence," *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022), and they "need not take every medical opinion at face value." *Cross v. O'Malley*, 89 F.4th 1211, 1213 (9th Cir. 2024). "Rather, the ALJ must scrutinize the various—often conflicting—medical opinions to determine how much weight to afford each opinion." *Id.* at 1213-14. The "most important factors" the ALJ must consider in doing so are "supportability" (whether the provider supported their opinion with citations to objective findings) and "consistency" (whether the opinion is consistent with other evidence in the record). 20 C.F.R. § 404.1520c(a); *id.* § 404.1520c(c)(1) (defining "supportability" and "consistency").

NP Tran's records reflect consistently normal mental health functioning, especially when Plaintiff consistently took his prescribed medication. AR at 916-939. On March 2, 2023, Plaintiff was evaluated to have "normal mental functioning" and be "cognitively intact" with intact memory, fair concentration, average intelligence, fair judgment and insight, and fair impulse control. *Id.* at 937-38. Similar notes were made at NP Tran's evaluations on March 30, 2023 (*id.* at 934-35), April 27, 2023 (*id.* at 931-32), May 25, 2023 (*id.* at 928-29), July 13, 2023 (*id.* at 924-25), September 7, 2023 (*id.* at 920-22), and October 25, 2023 (*id.* at 916-18). Although Plaintiff self-reported varying degrees of motivation and depression throughout that time, he was assessed to have normal mental functioning each time. *See generally id.* at 916-939. On March 21, 2024, NP Tran completed a mental residual functional capacity assessment and reported that Plaintiff had "no issues with concentration, memory, or alertness," was "patient, punctual, and

pleasant," and had fair judgment and insight. *Id.* at 1315. In this assessment, NP Tran also opined that Plaintiff was markedly limited in his ability to complete a normal workday, would be off task eighty percent of the workday, and would be absent from work potentially 15 days a month. *Id.* at 1314-15. However, the ALJ rejected this part of NP Tran's opinion, finding that it lacked supportability in light of the rest of the assessment and Plaintiff's normal activities of daily living. *Id.* at 26.

On December 15, 2022, Dr. Kendis completed a psychological consultative examination. *Id.* at 639-642. At this examination, Plaintiff reported feeling sad, having decreased motivation, and having a negative view of himself. *Id.* at 640. Dr. Kendis noted that Plaintiff was taking medication for his depression and anxiety and was seeing a therapist. *Id.* Dr. Kendis observed Plaintiff to be "alert, responsive, and cooperative," with no deficiency in delayed recall and fair attention and concentration. *Id.* at 641. Dr. Kendis concluded that "[d]ue to the combination of chronic pain, cognitive issues, emotional dysregulation, and anxiety, [Plaintiff] cannot currently maintain any meaningful job search, schooling or employment." *Id.* Dr. Kendis also concluded that Plaintiff had mild to moderate limitations in various work-related abilities. *Id.* The ALJ found Dr. Kendis's opinion unpersuasive because of its inconsistencies with the rest of the record, notably NP Tran's treatment notes and Dr. Bagner's report of Plaintiff's normal level of functioning. *Id.* at 25.

On October 26, 2023, Dr. Bagner performed a complete psychiatric evaluation. *Id.* at 946-49. At this evaluation, Plaintiff reported that he could bathe and dress himself, watch television, cook meals, and handle his own money. *Id.* at 947. After conducting the evaluation, Dr. Bagner concluded that Plaintiff had mild limitations in his abilities to follow simple instructions, comply with job rules, respond to changes, and complete daily activities, and moderate limitations in his abilities to follow detailed instructions, interact appropriately with the public, and respond to work pressure. *Id.* at 949. The ALJ found Dr. Bagner's opinion on Plaintiff's limitations unpersuasive because it was inconsistent with NP Tran's treatment notes and Dr. Kendis's report of Plaintiff's normal level of

functioning.

Plaintiff argues that the ALJ engaged in "circular reasoning" because each of the examining opinions – NP Tran, Dr. Bagner, and Dr. Kendis—was rejected in part due to inconsistencies with the other two. Dkt. No. 12. However, the Court finds the reasoning set forth by the ALJ is logical and substantially justified. The ALJ did not, as Plaintiff alleges, reject medical opinions based solely on inconsistencies with other entirely rejected opinions. Rather, the ALJ found portions of each opinion persuasive and other portions unpersuasive. For example, Plaintiff takes issue with the ALJ's rejection of Dr. Kendis's opinion based on its inconsistencies with NP Tran and Dr. Bagner's opinions because the ALJ also rejected parts of NP Tran and Dr. Bagner's opinions. Dkt. No. 12 at 4 (citing AR at 25). It is true that the ALJ found NP Tran's opinion regarding Plaintiff's workplace abilities and Dr. Bagner's conclusions regarding Plaintiff's limitations to be unpersuasive, but these are not the bases on which the ALJ found Dr. Kendis's opinion to be unpersuasive. The ALJ rejected Dr. Kendis's opinion because it was inconsistent with NP Tran's treatment notes and Dr. Bagner's record of Plaintiff's normal level of functioning, neither of which were discredited. AR at 25-26. The ALJ did not rely on circular reasoning, as Plaintiff suggests, but engaged in a thoughtful examination of each opinion in the context of the medical record as a whole.

It is evident from the Court's review of the ALJ's entire decision that Plaintiff's mental impairments were thoroughly considered by the ALJ, and the ALJ's decision not to include Plaintiff's mental impairments in the RFC was supported by substantial evidence. For the reasons set forth above, Plaintiff has failed to meet his burden to establish harmful error.

**B. <u>Substantial Evidence Support the ALJ's Conclusion</u>**

The Court now turns to the question of whether the ALJ's conclusion is supported by substantial evidence. The Court has independently "assess[ed] the entire record, weighing the evidence both supporting and detracting from the [ALJ's] conclusion." *See Ahearn*, 988 F.3d at 1115. Based on this review, the Court finds substantial evidence

supports the ALJ's decision, as summarized below.

The record confirms Plaintiff suffers from pain and limitations in his neck and back. MRIs throughout the record show multilevel degenerative disc disease, a prior C6-C7 fusion, degenerative changes, stenosis, foraminal narrowing, and edema of the fact joints. AR at 426, 532, 788, 1064-65. The record shows that Plaintiff has a moderately reduced cervical range of motion and tenderness and pain in his lower back. *Id.* at 516, 549, 559, 910. On November 10, 2021, Plaintiff underwent an L3-L5 laminectomy and fusion. *Id.* at 440.

The record also shows Plaintiff has limitations in his hands. EMG testing showed mild bilateral carpal tunnel syndrome. *Id.* at 1067. Plaintiff had left carpal tunnel release surgery in March 2024, and at the hearing on April 29, 2024, Plaintiff reported that he was scheduled for right carpal tunnel release surgery in six weeks. *Id.* at 40-41. The record also shows Plaintiff had surgery on his right knee in 2001, but there is no evidence that Plaintiff sought treatment for his knee during the relevant time period. *Id.* at 425. Treatment records describe Plaintiff's gait as normal and report full strength in both his upper and lower extremities. *Id.* at 444, 454, 463.

In Plaintiff's Adult Function Reports, completed on August 18, 2022, and September 23, 2023, he reports that he prepared himself simple meals multiple times a week, went shopping for groceries multiple times a month, could walk two to three blocks before needing to rest, and could drive a car. *Id.* at 301-302, 318-19. On September 18, 2022, Plaintiff's wife completed a Third Party Function Report and reported that Plaintiff was limited with movement and could walk about ten minutes before needing to rest. *Id.* at 275. At the hearing on April 29, 2024, Plaintiff stated that his wife helped him with self-care and meal preparation. *Id.* at 42. Plaintiff also reported that he took oxycodone twice a day to help with his pain and that he had been taking pain medication for some time. *Id.* at 44.

The Court finds the foregoing is relevant and substantial evidence adequate to support the ALJ's RFC, and the subsequent determination based on Plaintiff's RFC

that he was not disabled. Accordingly, the ALJ's decision will not be disturbed. *See Ahearn*, 988 F.3d at 1115 ("If substantial evidence in the record supports the ALJ's decision we must defer to the ALJ."); *see also* 42 U.S.C.A. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

## V.

## CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ's decision was not legally erroneous and was supported by substantial evidence. Plaintiff's request for reversal and remand is therefore **DENIED**. The final decision of the Commissioner of Social Security is **AFFIRMED**. The Clerk of the Court shall enter judgment accordingly and terminate the case.

**IT IS SO ORDERED.**

Dated: September 1, 2026

Hon. David D. Leshner
United States Magistrate Judge